Eric Dunn v. URS Corp. Eric Dunn is pro se. Press it up, Mr. Dunn, if you press it up, the upper part of the button, it'll raise it for you. Yes, he's been paying attention. Well, maybe not. Try the other way and just see if it goes down. Yeah, no, you don't. All right. It may be as high. You can come. Might know. There you go. That's it. That's the limit. Sorry. All right. Hold the mic. There you go. Hello. We got it. We got it. Okay. How you doing today? My name is Eric Dunn. I'm pro se in the discrimination case v. URS. It's been a long five, five and a half year battle with URS regarding discrimination case. Out of the four years, I went on countless interviews, wasn't working for four years, and depleted my savings, my 401k, when I got displaced from the ESA project. I had bouts with depression, insomnia, and high blood pressure resulting from this whole case and the whole claim. All I wanted to do was just get fairly compensated for the managerial work and stuff that I performed on the job, just like my coworkers that got promotions and fairly compensated. So today, I'm basically here to represent myself against URS for failure to rehire, termination, and- Mr. Dunn, did you put in any affirmative evidence of racial discrimination in this case? As far as to who? To URS or to- From URS toward you. That is, do you have any reason to believe that this was based on your race rather than your performance? Yes. Tell me what that evidence is. Because before, I had asked for a raise three times. I got denied all three times. And I got an email from one of the executives saying that the MTA wasn't giving out raises. But then, maybe a month and a half later, I got some documents that stated the person that told me this, the executive from URS, the agent, submitted paperwork to MTA for these certain people to get raises. So I checked and did my research on the people that was in this document, and all of them was of an unprotected class. They were white, not black. Yes. But did anyone ever say that you didn't get on that list because you were black? No. Because you were African American? Well, they didn't know that I had this information. No, but so did anyone ever say anything that would lead you to believe that they discriminated against you because of your race? They claim, as you must know, that your performance was poor. Okay, but in my 2009 work evaluation, URS work evaluation, 2010 work evaluation, 2011, which was better than 2009 and 10, the same person signed off on it. And it said exceed expectations as the overall- You say that's pretextual. Yes. And then, URS submitted emails, like criticizing my work, that was supposed to be emailed to me. That doesn't have the date it was emailed. It doesn't have my email address. It doesn't have the time it was emailed. If you print out an email, you will see all that information, what time the email was sent. But that was submitted to the court. Now, if I would have submitted something like that- You had never received those? No. And I said that in a deposition, that I never received these. Well, all right. We have your argument, and we've read your papers. You've reserved, I think, some time for rebuttal? Yes. One minute for rebuttal? We'll hear from URS. Thank you. Thank you. Good morning, honorable panel. May it please the court. My name is Sean Higgins. I represent the defendant, Appelli URS. The trial court's judgment, granting summary judgment, should be affirmed because there is just no evidence in the record of any discrimination. And the plaintiff acknowledges this, even on the first page of his appellant's brief. He says that he truly believes in his conclusory speculative statement, that he believes that if documents would have been submitted, it could have made a difference toward his case, at least in some part. So he's acknowledging that there was no evidence of discrimination. And the evidence that was produced, that was before the court, that is in the record, that was in the local Rule 56.1 statement, shows that there was no evidence. Mr. Dunn testified that there were no racial remarks that were made by URS, by MTA, by anyone to him. He testified there was no knowledge of any racial bias by any of the parties in this action. He testified, he acknowledged that there was no, he never made a complaint of discrimination while he was employed by URS, even though he acknowledged that URS has a policy that was given to all of its employees, encouraging employees to raise issues about any potential possibility of discrimination. So, Mr. Higgins, as I understand Mr. Dunn's argument, at least as he's continued to articulate it here, he asked for a raise, he was told he wasn't doing well enough to get a raise. He looks at the list of persons who do get raises, they are all Caucasian, and he infers from that, sorry, and he has gotten exceeds expectations performance reviews, and he infers from that that he's being discriminated against having had good performance reviews because he is African-American and folks who are not African-American are getting raises and he's not. So, would you just sort of take that apart, please, or give us the company's response to what he has said? Why isn't that a basis for inferring that he's been discriminated against on the basis of his raise? Yes, Your Honor. Well, first I'd point out that during the relevant time period that Plaintiff was talking about, there were ten employees that were given out-of-cycle raises, and out of those ten, two of them were African-Americans. There is also evidence in the record that URS and MTA have given raises to numerous African-Americans and that Mr. Vladeka, who is the URS employee that Plaintiff was referring to, wrote these letters on behalf of African-Americans. In addition, as we pointed out in our brief, this was a project where Mr. Plaintiff worked on the East Side Access Project, which was an MTA project. MTA was URS's client. And the procedure was that MTA would control when someone working on their project was going to be promoted and then when they were going to get a raise. That was not determined by URS. MTA would tell URS that this person is being promoted to this position, tell URS whether this person was getting a raise, and for recordkeeping, URS, and in this instance Mr. Vladeka, would then submit the paperwork to confirm that. The other thing is that there is evidence in the record, Plaintiff is making these allegations against Mr. Vladeka. Mr. Vladeka actually went out of his way to, there's a history of him helping Plaintiff to be able to continue working. This goes back to when Plaintiff first started in 2008. At the end of 2008 and the beginning of 2009, there were complaints by MTA, by the people who were responsible for daily supervision of Mr. Plaintiff, about his work performance. They told Mr. Vladeka that they wanted Plaintiff removed from their part of the project. Mr. Vladeka, the URS employee, then worked with them to try to find some other position for him. In addition, as far as the evaluations that Plaintiff refers to, all except for one of them are not part of the record, shouldn't be considered, but even if they are considered, these were evaluations that were given by, that were not given by the person who was responsible for daily supervision of Plaintiff. The complaints arose after the latest of those evaluations, the 2011 evaluation. It was after that that the MTA employee, Pandone, complained to URS. And I see that I've taken up my time. Thank you. Thank you. Mr. Dunn, you have a minute to tell us anything you want us to know. 90% of what he said is inconsistent. I think that every time they submit a pleading or a brief, they switch it up basically because they didn't expect me as a pro se to have all this backed up, backup information, and they usually don't. So every time they're switching up their claim, all I can say is it's been a long battle. I'm not here to come here and lie or make up anything. And hopefully you can see through the brief how up and down and inconsistent their claim has been against me. That's all I basically can say right now. I want to thank you for coming and making your own case. Thank you. Very impressive. Thank you both for a reserved decision. Thank you.